United States Court of Appeals for the 11th Circuit. Hear ye, hear ye, hear ye. United States Court of Appeals for the 11th Circuit is now open according to law. God save the United States and this honorable court. Good morning. We have three appeals to hear this morning. Our first case that had been scheduled has been submitted on the briefs by joint motion of the parties. We have experienced counsel this morning, so you know the drill. We're familiar with your appeals. We've read your briefs, the authority cited in your briefs, at least portions of the record. And so in the limited time that you have, you should feel free to go straight to the heart of your argument. We're probably going to have some questions. Do pay attention to the clock. Be mindful of our time. But if you're answering a question from the court, of course, feel free to finish your answer, even if the clock has expired. But do be mindful of our time. Our first case is United States v. Abovyan. Mr. Marcus, good morning. Good morning, Chief Judge Pryor, and may it please the oral argument this morning with the discussion of counts two through nine in this case, which involved the Controlled Substances Act counts. And I'd like to address three issues with those counts. First, why they're insufficient. Second, why the jury instructions were incorrect. And third, why the sentencing was unlawful. If I have time, I'll turn back to count one and discuss why the instructional error for count one was not invited. But let me start with counts two through nine, the Controlled Substances Act counts. And in those counts, the government theory was stated right at the beginning of the government's closing argument. It was, quote, these prescriptions were for buprenorphine when he, talking about Abovyan, did not have the right license from DEA. That's at page 104 of the closing. But that theory does not state a every single conviction under that act, under Title 846, the drug trafficking statute that involves a doctor, involves facts where there is no medical necessity, or as this court puts it, quote, not for any legitimate purpose. And so the case that was cited as supplemental authority by the government just last week, Ruan, those facts actually help our case very much. Because in that case, Ruan, the doctor there prescribed the most powerful opiates, saved for dying cancer patients. And the doctor there didn't give it to cancer patients, there were no cancer patients, he gave it to addicts to feed an addiction. And the doctor in that case, not only gave it to non cancer patients to feed an addiction, the doctor had stock in the company that owned the opioids. And so the expert in that case testified, there was no medical purpose at all for the prescriptions in that case. Similarly, in Ignasiak, another case by this court that the government relies pretty heavily on, in that case, patients were driving across state lines, and the doctor prescribed 43,000 doses of opiates to addicts who did not need it. Here, however, for counts two through nine is very different. There were patients who actually needed the suboxone, the buprenorphine that was being prescribed. And the expert witness for the government did not testify it was not medically necessary. What she testified was very different. She testified that because he didn't have the eight hour course, he wasn't authorized to prescribe the suboxone for addiction, for drug maintenance or addiction treatment. That's very different than the Ruan case than the Ignasiak case, because there was medical necessity for the prescriptions in counts two through nine. The government theory was simply that he did not have the appropriate license, the appropriate eight hour course. Miss jury charge. Now the jury charge correctly said the government as to the elements of the fence had to prove that he did so not for legitimate medical purpose or outside the course. So the jury instructions on those counts were okay, correct? No, they weren't. Because if you turn to the next page, your honor, page 20 of those jury instructions, they explain that in order to, if you look at the second full paragraph, in order to prescribe buprenorphine for detox, a practitioner is required to obtain the license. And it says the practitioner must apply and it goes on. Yes, but that's not what that's not what the instructions say are the elements of the crime. The elements of the crime, the defendant can be found guilty if only the following are proved beyond a reasonable doubt. The court doesn't say in order to find him found he had no license or anything like that. No. So what they do, your honor, is they explain what outside of the coast of course of medical practice means in that next page. That's why those instructions were included. And so the court ties outside of the course of medical practice to not having a license. And so both the government's theory on these counts is wrong and the jury instruction defining what is outside of the course of medical practice is wrong. There's a specific step. I don't see that where they say that's outside the medical practice on that page 20. I'm looking at page 20. I'm reading it. They don't say anything outside medical practice. They just say in order to prescribe it, you've got to do this and this. And it's to prescribe it for certain purposes. To prescribe it for detoxification and maintenance treatment, you're required to obtain that waiver from under the Act. And then there's the instruction about the number, the registration number. At least as I read them, those are correct statements of the law, I think. They're correct statements of the law in a vacuum, your honor, but not when it's 846 and the elements of 846. What that page 20 is defining, Judge Pryor and Judge Hall, is a different statute. Title 21 United States Code 823. In 823, those are the requirements for having a license. And so what this page on page 20 does is just pull the definition of 823. My question then is, it seemed to me that the evidence about not having a license was really just part of the factual context of showing why he was not doing this for a medical necessity. It was the fact that he never saw the patients really. He signed pads of prescriptions. He didn't even have a license. All of this related to the backdrop that the jury had to know about in order to decide whether he was doing it for a legitimate medical purpose. Now tell me why that's wrong. Sure. So it's wrong for a number of reasons. You'll see, your honor, that none of the patients after he got a license were charged as substantive counts. That's because the government knew and the government relied on the theory that he didn't have the eight-hour course. That's why they started their closing argument with that sentence, that not having that eight-hour course was sufficient for conviction. And so that was an incorrect statement of the law and that's why the jury instructions were so prejudicial on this point. They didn't charge any patient after he got the eight-hour course in September of 2016. The government's theory was based on counts two through nine on him not having that course. Now, your honor, Judge Hall, you speak of the other, some of the other facts, signing blank prescriptions and those other things. Those go to count one. The health care fraud deals with some of those other facts. And again, we have arguments for that. But counts two through nine, the theory, both in the government's brief on appeal and in closing and opening, was that he didn't have the proper... Let me stop you and ask you this question, Mr. Marcus. Yes. Insofar as your first argument is that the evidence is insufficient because all they had was the violation of the statutory requirement, 823G, that he have the license, he didn't. But didn't we have substantial additional evidence from which a jury could have inferred a violation of 841A1? What I'm referring to specifically are some of the things that Judge Hall referenced. You have one, that he presigns a whole bunch of prescriptions, certainly not the normal way a doctor would proceed. Two, you have the fact that he lied on the patient's notes. Among other things, he writes on the notes about discussing the results of the multiplicity of tests with his patients when it's clear from the record that he didn't, or at least that was an inference that could be drawn. He lied on the notes about a patient being normal, clean, and doing well at a time when the test showed that a patient was actually abusing drugs. And he made a series of inculpatory admissions to the FBI. So it seems to me you have more than simply a violation of 823G. I would agree with you, if that's all you had, that is plainly insufficient. But don't you have a series of other facts from which the jury could have found a knowing, willful intent to violate the statute? Thank you, Judge Marcus. The answer is no, for a number of reasons. Those facts that you just ticked off, and that Judge Hall mentioned before, go to health care fraud on count one, but not to... Well, that's my question. Why does it just go to count one, rather than to the drug counts as well? Because, Your Honor, the question on the drug counts is whether the prescription for buprenorphine or suboxone had some medical purpose. And the answer to that, no expert said it didn't. The expert, in fact, said it did have a medical purpose, the government's expert. No patient say they didn't need it. No witness said they didn't need the prescription. Every single government witness said that that suboxone was necessary for the patient's care. Let's assume, for the purposes of my question, that the prescriptions were for a legitimate medical purpose, to treat addiction, maintenance addiction, not pain addiction. But isn't it also clear that the distribution would be unlawful if it was not made in the usual course of a professional practice? Yes, as that term is defined by this court's cases. And what that means is that, and this court has said it numerous times, that it's for no legitimate medical purpose, that it's not for the treatment of a patient. Language, the language precisely is the distribution is unlawful if, one, the prescription was not made for a legitimate medical purpose, or, and it's in the disjunctive, two, the prescription was not made in the usual course of professional practice. Absolutely, Your Honor, and that's why... The usual course of professional practice, among other things, to leave pads of signed prescriptions without a date, without the name of a patient, would it be the usual course to test on a multiplicity of occasions and never discuss the results with a patient? And then would it be in the usual course of professional practice to lie and misstate on the notes, the doctor's notes, as well the things that I mentioned? Was those items taken in concert, constitute practice in the usual course of professional medicine? Well, I have answers to each of those, Judge Marcus, but let me answer it simply and avoid it all, because the page 20 of the jury instructions defines what you've said there as not having the license. So the jury was instructed, you can find this doctor guilty simply by finding that he didn't take the eight hour course. Forget about all the other stuff you mentioned. I understand the problem with the instruction. I was just asking whether or not a jury couldn't find, from all of these facts, sufficient evidence to find a knowing and willful violation of 841 and 841. I think I've run out of time and I really wanted to address that invited error question. If I could have 30 seconds to do it. Your Honor, Judge Marcus, this started the invited error doctrine with jury instructions back in a 2010 case that you were involved in, United States versus Frank. And in that case, what happened was the jury was deliberating and they had a question about the instructions and the defense proposed an instruction which was given. That's clearly invited error where the defense proposed the instruction and it was given. That has been expanded now in other cases, but the government is asking for it to be expanded here where the defense did not propose the instruction that did not include the elements of the offense. It is not invited error in this case, simply not to object. It would be expanding that doctrine way too far. So I'm glad I had just a couple of seconds to address that because I think it's important. I know my time's up. I had a lot to say, but thank you for hearing me out. I don't think the evidence was sufficient in this case. Thank you. Okay, Mr. Marcus, you've saved three minutes for rebuttal. Mr. Katz. Good morning, Your Honors. May it please the court. I think, Your Honors, Judge Hull and Judge Marcus had it right. This isn't when the government didn't just rely on the theory that the doctor did not have the X number. There were so many other things. I wanted to add another thing to Judge Hull and Judge Marcus's list as well. It's that the evidence about that the defendant treated his private practice patients differently. Alejandra Torek, who was his office manager at his private practice, not involving reflections, testified there he did not sign... He did not presign the blank prescription pads, and he went over the test daily. And that's at docket entry 281, pages 199, 215, 222, and 223. Additionally, Your Honors, I wanted to correct something that my brother counsel said. The expert actually did testify that there was medical... That there was not medical necessity. We had doctor... And the jury was entitled to rely on Dr. Clark's testimony that the defendant was acting outside of the course of professional practice. The prescriptions were a false diagnosis and that there was no medical necessity here. I think what you've done here, though, is you've run together, whether there was a good medical reason. There's no dispute here. Is there that each of the folks who were treated with the opiate, with the suboxone, in fact, had addiction problems, and the treatment they were offered would be the medically indicated treatment, or at least one of them, for a diagnosis of addiction? Do I have that right? I think that's fair, Your Honor, yes. So your argument really has to be on sufficiency that the evidence really went to practicing outside the normal course of the medical practice here, rather than the first. But I... Your theory of the case before the district court, that a violation of 823 G alone was sufficient to state a crime under 841 and 846? I don't think that... I don't think that came up. I think the district court mused about some strict liability, but that was never in front of the jury, Your Honor. It was in front of... It was just during the charge conference. No, no, I understand it was expressly said when the court was having a charging conference with you, but wasn't it your theory that the defendant could be convicted if all he did here was violate 823 G? Yes. I believe that was one of the theories below, Your Honor, but the government believes and wants and understands that sometimes you need more than that. So in this case, we do have a lot... No, no, but did you tell the jury, or did the United States attorney tell the jury, in words or substance, that if he proceeded without the DEAX number, he was in violation of the criminal statute? I would have to go back and check, Your Honor. I believe there was something to that effect that was said in the closing argument. I reread it yesterday. Wouldn't that be error? No, I don't think it's error, Your Honor, because the jury was instructed correctly. The jury was instructed... Alright. Let's hold aside the instructions for a moment. You would agree with me, would you not, that as a matter of fact, if the defendant was a licensed physician who didn't have a DEAX number, who prescribed suboxone, that would not state a crime under 841 A1? Or is it your view that it does state a crime? I think it's an interesting question. I think it could state a crime under that. Well, here's the essential question here. But we had... I mean, is it enough to state a crime under 841 simply to say that he didn't have a DEAX number? I think it is, Your Honor. But in this case, we do have a lot more than that. Is there any case that is ever held that a violation of 823 G is enough to state a crime under 841 A1 and 846? I have not found one, Your Honor, in my research on this because I know the Data 2000 Act... I know that the Data Act is fairly new, especially with the AX number. But we have a lot more evidence in this case, Your Honor, as you and Judge Hull pointed out about the... It's much more than the medical necessity. It's the pre and the medical records. It's the treating private practice patients differently. It's the only insurance... Only those with insurance that were tested. And the fact that this was just more than... This was just... There was no treatment here. It was just prescribing and testing. Would it be a violation of 841 A1 if the doctor was not properly dated on the day of issuance? Certainly a violation of the regulations. Would that constitute a violation of 841 A1? I think if the jury found that the doctor was... That they weren't for a legitimate medical purpose and outside the usual course of professional practice. So that would be up to the jury. And here, the jury was instructed that to find a violation of 841 A1, it had to be for a legitimate... Had to be not for a legitimate medical purpose or outside the usual course of professional practice. And Dr. Clark provided a great deal of testimony to that. But the United States didn't just rely, I wanna point out to the court, only on the doctor not having an AX number. As you and Judge Clark said, there was more than sufficient evidence for counts two through nine. I have a question about not for a legitimate medical purpose. Mr. Marcus argues, well, this is a drug that is used for treat addiction, and so therefore, it was prescribed for a legitimate medical purpose. My question is, it seems to me that if you're prescribing this drug and you're not really seeing the patient, you're not treating the patient, you're not counseling the patient or doing anything, even though it is a drug that can be used for addiction, you still are not prescribing it for a legitimate medical purpose. And I'm saying that so Mr. Marcus can be prepared on that. It seems to me that it doesn't matter that this is a drug that could be used properly to treat addiction, but it wasn't used properly here to treat addiction. And so you said Dr. Clark testified. Tell me what Dr. Clark said. Yes, Your Honor. The jury was entitled to credit Dr. Clark's testimony. She said that the prescriptions for Suboxone and the other controlled substances were outside the usual scope of professional practice. Not that it was not medically indicated for the treatment of addiction, correct? She said that there was no medical necessity documentation. I'm not asking about necessity. I'm talking about the first prong of the test. The distribution is unlawful if the prescription one was not for a legitimate medical purpose. Would it not be, again, a legitimate medical purpose to prescribe Suboxone for patients who were addicted to heroin, et cetera? I believe that that is a legitimate medical purpose. But what Judge Hull was discussing, Your Honor, that there weren't other... That the doctor didn't prescribe correctly, that the doctor didn't examine the patients, he didn't treat the patients, that there was no treatment, that there were test results that he didn't even look at. Right. Doesn't all of that go to the second prong? The disjunct of the prescription was not made in the usual course of professional practice. That's what your case is about, isn't it? I think it goes to the first prong as well. I believe it goes to the first prong as well for the same reasons, Your Honor. Your point is that if there are unnecessary tests, if he's not looking at test results, then that shows that it was not... He didn't care whether these patients needed them or not. It's not clear that they were for a legitimate purpose. Is that the point? Yes, Chief Judge Breyer. Correct. I wanted to talk about the invited error. I wanted to address what my brother counsel discussed. I understand and the government concedes that there was not a proposed instruction here. And I know Judge Marcus has written about invited error in other cases, but I believe this is similar to the Feldman case where the defense attorney said, that's fine, or the Silvestri case where they just talked about that the instructions covered the basis. Here, the defendant invited the error, and in fact, the defendant also argued the instruction in his closing over five pages, docket entry 285, 148 to 152. And additionally, I wanted to address plain error in the event the court doesn't believe this error is invited. I think a point that needs to be made, Your Honors, is that nobody disagreed that there was a healthcare fraud conspiracy. In fact, my brother counsel in his brief on page 33 in footnote seven says that there's a conspiracy. So there's no disagreement. And in closing argument, there was no disagreement that there was a healthcare fraud conspiracy. The only issue was the defendant's knowledge, and the jury instructions for conspiracy took care of that. The jury instructions on page 14 required that the defendant, and quote, knew the unlawful purpose of the plan and willingly joined it, end quote. And that would negate any plain error. So there's been no... Nobody in the entire case disagreed that there was a healthcare fraud conspiracy. The disagreement was whether the defendant knew about it and joined it. If the district judge in the instruction, Mr. Katz, had said that you may find a violation of 841.81, if the defendant prescribed suboxone for detoxification and maintenance treatment without a DEAX number, would that have been an error in the instructions, in your view? I'm not saying that's what he said, because he said more than that. Right. But if that's what he said, would that be a violation of the law? I don't think it's an error, Your Honor, because on page 21, the next page, it says, Thus, a medical doctor has... The last sentence, Thus, a medical doctor has violated the Controlled Substances Act when the government has proved beyond a reasonable doubt that the doctor's actions were not for legitimate medical purposes or were outside the usual course of professional practice. And then if you... Okay, your point is that he said more than that. He said more than a violation of DEAX number requirement. Yes, Your Honor. And additionally, he said even more than that, if you look at the good faith instruction. Right, but my question to you was, if all he had said in that regard is that you could find guilt beyond a reasonable doubt if he knowingly and intentionally prescribed suboxone without a DEAX number. That would be an erroneous instruction, would it not? I think the district judge would also would have to say for... Not for a legitimate medical purpose. Why don't we just answer the question? If that's all he said, that would be wrong, right? Yes, if that's all he said, nothing... Okay, that's all I'm getting at. So I understand you say that's not all he said. He spoke of intent on the front end and the back end, willfulness, et cetera. But if that's all he had said, that would violate the law, and we would have to reverse. Yes, Your Honor. Does the court have any other questions or want me to address any other issues? No, not for me. Thank you. Thank you, Mr. Katz. Mr. Marcus, you saved three minutes. Thank you. And I'd like to get right to the questions that Judge Hull and Judge Marcus asked about the other things, because the problem here in this case is that we couldn't have the debate before the jury that Judge Hull and Judge Marcus raised with those other facts, because the instructions basically say, if you didn't have the license, then you have not prescribed within the course of medical practice. And you need look no further than page 22, the good faith instruction, which says, you only have good faith if you have the proper license by DEA and SAMHSA. You can only prescribe in good faith if you have the proper license. So it doesn't say more, as Judge Marcus and Judge Pryor, you asked, it directs a verdict if you did not have the proper license. And we know that that was the government's decision. And we know that Judge Hull and Judge Marcus did not play into any patients after he got the license. So the court should at a minimum remand for a new trial on those counts without the instructions on page 20 and 22, which in essence direct the verdict. We know that these other facts that Judge Hull and Judge Marcus have brought up did not play into counts two through nine, and for sure counts three through nine, the substantive acts, the substantive counts, because in those counts, those are specific patients that did not even testify. Most of them did not, two of them did. The two that did say they did need the suboxone. The government's theory on the substantive counts is stated in the closing argument and in their brief at page 43. If the court looks at page 43 of the government's brief, it says, Dr. Clark testified that the buprenorphine prescriptions before September 20th, that's before he got the license, were outside the scope of professional practice and without a legitimate purpose. And then it goes on to say that he didn't have the appropriate license. So it's very clear, the expert witness, the government's theory, the government's brief, the jury instructions all said, if you don't have the license, you're guilty under 846. And that was improper. That theory was improper for sufficiency. The jury instructions were improper on that theory, and therefore those counts at a minimum should get a new trial, but I think should get reversed because the government's theory is an improper one and not sufficient. Finally, on the invited error point, the Feldman and Silvestri cases that the government just spoke of, Judge Marcus, that you were involved in and some of the others, those specific cases, the defense lawyer was asked about the instruction at issue. And in those cases, the defense lawyer said, yes, that instruction itself covers the basis or that instruction is fine. I understand why in those cases that might be invited error. Nothing like that happened here. There was no discussion of the specific instruction and nothing by the defense that invited the error. So I don't think we should extend that invited error doctrine that far. Thank you, Judge. Thank you, Chief Judge Pryor. Thank you, Judge Marcus and Judge Hall. Nice seeing everybody on Zoom. Thank you, Mr. Marcus. Thank you both. We have your face and we'll move to the next one.